The next banner on our calendar is Citizens United and Citizens United Foundation v. Eric Schneiderman, the Attorney General of the State of New York. Counsel, you may begin. Good morning, Your Honors. Michael Bowes on behalf of Citizens United, and may it please the Court. On the First Amendment claims in this matter, the District Court made four critical errors, any one of which would justify reversal of the dismissal under a Rule 12b6 motion. Number one, with respect to the prior restraint contentions, once the District Court correctly found that the regulations at issue imposed a prior restraint on free speech, that prior restraint was presumptively unconstitutional. Prior restraints do not always deal with the content of the speech. The prior restraint is simply the requirement that you have a license prior to speaking. And here, when the District Court found that it was plausibly a prior restraint, from the standpoint of a First Amendment claim on a motion to dismiss, that should have been the end of the analysis. Your argument is that if there's any, supposing that the regulation were simply nothing more than, if you're going to solicit money in the State of New York, you need to first come and sign and file a document identifying yourself, period, as a charity that's soliciting funds in New York. Nothing more than that. Your argument would say that that is subject to strict scrutiny as a prior restraint? That's not the situation here. I know, but I'm talking about the argument you just made. It is the argument you just made. The Supreme Court has said that a mere registration requirement would not constitute an unconstitutional prior restraint. Well, they've said more than that. That's correct. They've said a disclosure requirement doesn't do it, haven't they? Well, this is more than a disclosure requirement, because it's a ban on speech absent the disclosure. You need to disclose your donors at the time of the initial registration. They said a disclosure requirement doesn't burden ability to speak. You mean they were talking only about some disclosure requirements? Is that your theory? Some disclosure requirements, they still burden speech, but it's the question of what the degree of the burden is. And the question is— Doesn't every state, if they have a disclosure requirement, also say, and if you don't comply with it, you can't proceed? You can't solicit? That's not correct. That's not correct? They just have disclosure requirements, and they said, it's up to you whether to bother with them? Fines imposed after the fact are different than prohibitions that prohibit you from speaking to begin with. Even if it applies to everyone? That's the rule that the Supreme Court has set down with respect to free speech, and especially with charitable speech. This isn't campaign finance case. This is a charitable speech case, and the ability of people to make anonymous contributions to charity. You're saying that if there's any requirement, if there's any requirement of filing a form that simply specifies who is the organization, what is its address, and so forth, and that the lawfulness of soliciting the funds depends on having filed that form, that is a prior restraint that is subject to strict scrutiny? That is a prior restraint that's subjected to heightened scrutiny at a minimum. Heightened scrutiny, whether it's strict scrutiny or exacting scrutiny. The Supreme Court seems to use those terms interchangeably and hasn't been perfectly clear on how that scrutiny applies. In this case, one of the problems, and it's one of the four problems, is that the court really applied rational basis analysis, because the Attorney General has not filed grounds of defense in this case. We don't know what the justifications for the rules are. We don't know what the justification for the speech ban is. They're asking that the court merely take their word for it, but we know from the California case that when the evidence came out at trial, the justifications did not match up to what the official said. Your case is just as good as a case in which the organization was not required to file the Form B with all its contents, even if nothing more were required than simply identify yourself and give your address, and if you don't do that, you can't solicit in New York State lawfully. This case is much stronger because it imposes a prior restraint that requires a disclosure of confidential names and addresses and contribution amounts of an organization's biggest donors. The Attorney General will not disclose. Is it constitutional then? Assume he doesn't disclose and the regulations forbid him from disclosing. Yes, because that would be the NAACP case, Your Honor. In the NAACP case, there was no evidence that there would be public disclosure. Here the allegations are that contributions have been disclosed in the past, and that was made on information and belief, but it subsequently turned out to be correct because we know the American Bar Association's donors were publicly disclosed, which brings us to some of the other errors. Was that the one organization that was disclosed? Well, we haven't had discovery yet. The allegation is that, and it's made on information and belief, and information and belief is sufficient based on the physician's health care decision that was handed down subsequent to the trial court's decision here and actually subsequent to our initial briefing. Is that your 28-J letter? That's the 28-J letter, yes. That letter, you cited what you said was a recent case. Yes. And the recent case has the quote you want us to look at about information and belief. That's correct. That's all that new case has, right, is that quote. The facts of that case don't help you, right? The legal principle set down in that case. The quote about information and belief, which comes from Arista Records, right? Right. That quote does, and the fact that it does not require a … I'm just curious why you did that. Arista Records was out there for years, which has the very sentence you want us to look at. That's correct, Your Honor. Can you give us a 28-J letter to say, and you just quoted that sentence recently. Is that it? The physician's health care case is important because the Arista Records case arose out of an awkward situation. It wasn't a 12B6 ruling. It was a ruling on an attempt to quash a subpoena. So we wanted to make clear that there is existing controlling precedent on that particular point of law. Well, it's not precedent. It didn't decide that issue at all. There was no issue in the case you decided about whether the information and belief pleading was adequate. It just had a parenthetical that reminded us that in Arista Records we had said that, right? Well, it's helpful precedent in this case. And that's what Rule 28-J is there for. All right. When you rely on information and belief, can you just say on information and belief, or do you have to at least plead what the information is that you believe? Well, here we pleaded what the information was that we believed. We believed that the policy was not being enforced uniformly. It had not been enforced. The Attorney General says this policy was in place for nine years. Did you plead any information that showed that? We did in the pleadings, although we believe that the holdings say you need not do that. What does it say specifying the information that you say you believe that indicates that? Right. There were two paragraphs, paragraph 28 and paragraph 32. Paragraph 28 says, on information and belief, not all organizations who have declined to file full Schedule Bs have been sent deficiency notices. On information and belief, the Attorney General has exercised unfettered discretion to select which organizations will receive the notices. You have information that some of them haven't. Isn't that a fact that you need in order to make your pleading plausible? The cases say that when that information, when the facts relating to that are peculiarly within the possession of the defendant, that nothing more is required. And this is information that's peculiarly within the possession of the defendants in this case. It's their policy. They understand their internal procedures much more than we do, Citizens United. We did not receive, they say the policy had been in effect since 2003. It took them until 2012 to send Citizens United a letter. We suspect. I thought your fact was not an internal fact. It was that out there in the real world, there are some other people to whom something has happened. Is that the fact? It's an internal fact that not all organizations who have declined to file the Schedule Bs have received deficiency notice. That's an internal fact within the Attorney General's office. Can I ask you a question about the policy underlying this? First of all, the Attorney General always had the right to send deficiency notices, and he changed the policy. Isn't that correct? He always had the right to do it. Well, the Attorney General always has the right to send deficiency notices when there are deficiencies. We've alleged that this is not a deficiency, that this was a change in policy that took place when Mr. Schneiderman became Attorney General. In the prior years, it was never required of Citizens United. It was never required of Citizens United Foundation. It was lax enforcement until Mr. Schneiderman took over the office, and he brought more rigorous enforcement. What's wrong with that? Well, that's a factual issue as to whether or not he brought more rigorous enforcement. You just told me he did. This case is on—this is what the Attorney General says. That's a grounds of defense. That's a factual issue. We're entitled to probe that. Didn't you just tell me that the law was on the books, but no one enforced it until Mr. Schneiderman took over the office? We didn't say no one. It wasn't enforced with respect to Citizens United. Citizens United never received a deficiency notice. That's all you know. That's what we know. That's correct. I want to switch and ask you about the federal policy underlying donors. Federal tax law requires that the donors have to be filed with them, correct? That's correct, Your Honor. We're talking about 501c3. 501c4 doesn't have to be filed with the feds, or does it? No, that's not correct. Both 501c3 and 501c4 file Schedule Bs with the IRS. What difference is the state interest in getting the list of donors? I mean, the feds do it to make sure charities are not corrupt. Isn't that true? The feds do it to enforce the federal tax law to make sure someone's not taking a charitable contribution for something that's not a charitable gift. That was the justification the IRS gave for that. Does the state have the same underlying interest? Not with respect to Citizens United and Citizens United Foundation. These were out-of-state organizations. Well, you want a license to solicit in New York, though. Still don't pay New York taxes, and Citizens United doesn't pay New York taxes. There may be a different interest with respect to organizations that are situated in New York, but they're governed under a different law. That's the estate powers and trust law. People who you solicit in New York very likely pay New York taxes. Yes, that's correct. I have one more question, and then I'll turn you over to my colleagues. 501c3, those contributions by the donor are tax-deductible to the donor. It's an exemption from paying taxes on that money. Isn't that correct? It is if they itemize their taxes. That's correct. And 501c34, the taxpayer, the donor, does not get a deduction. That's correct. Is it true that 501c3 money can be sent to 501c4s, and doesn't Citizens United do just that? It's actually the opposite. It's much easier for C4 money to flow to a C3, because the C4 can engage in broader activities than can the C3. So the flow is actually in the opposite direction. But does it ever flow in the direction from C3s to C4s, which would allow a taxpayer to get a deduction for political advocacy? No, that's forbidden. That's forbidden. That's forbidden by federal law. Going from one to the other? C4 money can go to C3 organizations because the C3 cannot engage in political activity. If a C3 wants to give to a C4, it has to for a specific purpose that falls within a C3 purpose. But that's not what's going on here. It cannot be used for political purposes. It changes the character of the money by sending it to a C4. It's absolutely forbidden to use C3 money for political purposes. That's grounds for the IRS to revoke the tax-exempt status. So therefore, 501C3 donors should be listed because they are taking deductions from New York State and federal taxes. How do you check on that if the donors are not listed? The IRS gets that information. And the Attorney General, there's a means by which the Attorney General, if that's the reason why the Attorney General wants that information, there's a method. If the IRS is set up, that goes to our federal presumption argument that if the IRS has set up a specific procedure to maintain the confidentiality of the donors and requires and sets forth the procedure by which the Attorney General could get that information directly from the IRS, but the Attorney General here doesn't want to go through those safeguards. There are safeguards that are set up by federal law. I have one last question on a different topic. How does 172ENF change the terrain? 172ENF. Requires disclosure. New York State Legislature. It's not in your brief, so I wouldn't expect you... Yeah, I'm not familiar with 172ENF. It makes donations to a 501C4 conducting political activity disclosable. And this was passed by the legislature, I think, in the last two years. That regulation sounds to me to be a campaign finance regulation. Citizens United does not engage in those activities in New York State. It's sort of like the situation where an organization could set up a separate segregated fund under federal law and you tell your donors in advance if you give contributions to this, they'll be disclosed. Engage in political activity in other states? Citizens United? Citizens United has engaged in political activity in Virginia, yes. But you want to solicit money from New York donors, which this new statute would prohibit you from doing if you engage in political activity anywhere. I don't think that New York law can control what goes on in Virginia unless it was a solicitation that went into New York. For example, if a Virginia donor gives to a Virginia organization, New York law doesn't come into play. New York law can only prohibit Citizens United and the Foundation from soliciting New York donors for money that is used for an improper purpose. And Citizens United does not do that with respect to contributions from New York. Citizens United has a separate segregated fund that's set up for making political contributions. And those donors are disclosed under federal law. Those are 501c3 or 501c4? The PAC is a separate segregated fund of the 501c4. It is. It is a PAC. All right. Any other questions? I want to come back briefly, I hope, to the information and belief pleading. Yes. With respect to the Schedule Bs, your complaint says the filings have been made publicly accessible by the Attorney General's office. What does that mean? That means when you go onto the Attorney General's website, you can get that information. In fact, it turned out, at least with respect to the American Medical Association, that information was on the Attorney General's website. The names and addresses and contribution amounts of the major donors to the American Bar Association. Are available on the Attorney General's website? I think they've taken it down since it was brought to their attention that they were there. We've not conducted full, complete discovery at this point. Well, I know you haven't done discovery, but you make an allegation that they're publicly accessible when you file your complaint. Now, are you telling me that's no longer true? I'm telling you that we believe it's still true. We know that that's what happened in California. This is where I have trouble with the information and belief. If you want to say to a court that the Attorney General's website has information on it, I would have thought you would say what that information is, not just you believe he has some information, you tell us what it is. But you now, I think, are saying to me it's no longer true that he even has it accessible. Is that right? I'm not saying that at all, Your Honor. I'm saying that we believe that if you went through the tens of thousands of organizations that are there, that there would be information. I'm not asking you to go through ten thousand organizations. I'm trying to find out what your pleading means when it says his website, one website, not ten thousand, has that information. Does it have it at the time of your pleading? It did at the time of our pleading because the ABA, the AMA names were on that website at that time. And is it now undisputed that they've stopped doing that? It's not undisputed that they've stopped doing that. And it's undisputed that they corrected or removed that one organization. If you stand there and say it's not undisputed, what have you found from their website that puts it in dispute now? We have not conducted any further discovery since the case was fixed. Well, this isn't a discovery. You've got a pleading that says you believe there is certain information. And it's available to you at a click of a computer to know it. It's not that easily available at a click of a computer. But you say publicly accessible. You have to look up each subject organization's name. Well, that's the only way you can do it. That's the only way we know what to do it. There's a website that collects these. Right. You look up all the filings for each independently the organizations. You look up organization A. What did they file? And then you've got to go through all the filings on that organization. And then the next organization. That's a process that will take a lot of effort. And that's what you meant when you said to the court publicly accessible. That's publicly accessible. Yes, that's what's meant. That's quite a shorthand. That's what's meant, Your Honor. That's quite a shorthand. But that's what happened in California as well. They admitted it was an error in California, and they took it down as soon as they found out. Did California take it down as soon as they found out? There were names up there showing up there in California up to and through the date of trial. That's what the trial judge found in California. Let me switch over to the other part of your pleading, which says he has unfettered discretion. That's part of your allegation of why it's a First Amendment violation, right? That's correct, Your Honor. Okay. Unfettered discretion to do what? Unfettered discretion to decide what information can be required and unfettered discretion to change those rules and regulations at his whim, which he has done. It's not unfettered discretion as to whom he will require to file this form. It's not that discretion. You're not claiming that. It's a discretion to impose new requirements. Is that it? It's a discretion to impose new requirements. And he did try to impose a public filing of donors' requirement at one point that we pleaded in the pleadings. And then he, out of the blue, used the same discretion to rescind that requirement. So that was two exercises of unfettered discretion in that situation. He doesn't have unfettered discretion to disclose, do you? We think he does have unfettered discretion to disclose because the New York State FOIL law is permissive. It's permissive. It allows public officials to even disclose where they are not required to disclose. Now, he tries to bootstrap by saying federal law prohibits him from disclosing. But that's the same federal law that he says doesn't bind him to go through the IRS methodology to obtain the information. So we don't think he can have it both ways there. Either the federal law applies or the federal law doesn't apply. Does 172, which I alluded to before, give him the right to disclose? He doesn't have the right to disclose Citizens United's donors. Citizens United does not solicit contributions from New York for the purpose of influencing New York elections. It just doesn't happen. All right. We've had a long discussion. Let me turn to the Attorney General. You have reserved three minutes for rebuttal. Barbara Underwood for the Attorney General. New York requires charities that solicit funds from the public to file with the state a form disclosing donors that they are already required to file with the IRS. The First Amendment doesn't prohibit New York from requiring a copy of that federal form. This is not an unconstitutional prior restraint. Prior restraint is a term of art. It's a doctrine that is aimed at laws that give government actors the opportunity to screen and censor prospective speech, either for content or for the identity of the speaker. This regulation does nothing like that. Over and over again, the Supreme Court – If I understand correctly, you have made an argument that it's not a prior restraint because they have been soliciting for quite some time and because they complied with the requirement at an earlier date long ago and have been soliciting all through. But isn't it – apart from the question, I'm not saying is it an unconstitutional prior restraint, but I understand you to be arguing that it's not a prior restraint at all, which I don't understand. If the lawfulness of their solicitation in year two – in year 11 depends on their having filed in year 10 the Schedule B for the current year, then isn't it a prior restraint that – isn't it a restraint that forbids them from soliciting in year 11? We're not resting on chronology alone. The chronology is informative. The fundamental point here is that this is not the sort of thing that the courts have characterized as an unconstitutional prior restraint. Sometimes they don't call it a prior restraint at all. It's just a registration requirement. Sometimes they call it a prior restraint but a valid one. And the courts do both things. And it doesn't really much matter which way you look at it. It doesn't have the vice of the things that the courts regularly strike down as prior restraints because – Vice is what? Giving an official – sometimes it's an administrative official, sometimes it's a court where injunctions are involved – the discretion – the authority to make a discretionary judgment that censors or has the potential to censor content or the identity of speakers. That's the harm the prior restraint doctrine was aimed at and not an objective registration requirement, an objective disclosure requirement. That kind of – yes. If it let you pick and choose among content and if it were a prior restraint, that picking and choosing on content is what would make the restraint unconstitutional. Yes. Wouldn't make it a – that isn't how we would know it was a restraint. That's how we would know it was unconstitutional. Is that right? Yes. But I think what I want to – what I've been trying to point out is that when there is not that at all because there is just an objective condition like filing registration documents or a time, place, and manner restriction, the courts – even though the English language would allow you to call that, too, a prior restraint, the courts don't generally describe it that way. Whether, as I say, they say it is, of course, a prior restraint but it's a valid one or whether they just don't use the analytical framework of prior restraints at all for such a thing. His point, if I understood it, is that when they say a disclosure requirement doesn't burden speech, they were referring not to a disclosure requirement that prevented you from starting by registering. They were referring to the kind of disclosure requirement that is enforceable by a fine or some other sanction after the fact. Is that – do you agree with that? No, I don't agree with that. So that you're saying when they said a disclosure requirement doesn't burden speech, they were indeed talking about a disclosure requirement that must be obeyed in order to begin solicitation. Is that right? It could be in order to begin or it could be, as Judge LaValle was pointing out, in order to continue. But it comes prior to the solicitation. Or to some solicitation, not necessarily to commencing solicitation. So that if there's a – as there is here, a disclosure requirement imposed prior to the continuation of solicitation, you believe that's not enough to be a prior restraint? Well, as I said, I don't want to quibble over whether it's not a prior restraint at all or whether it is literally a prior restraint, but it is of the sort that the courts have not said have this overwhelmingly difficult burden. They routinely instead approve them. The latter is what you're arguing. The latter is what you're arguing. Yes. Counsel, is it true that the statute always allowed sending a deficiency notice for entities that did not file their donor list, but it only happened once Mr. Schneiderman became Attorney General? Roughly speaking, yes. I'm not going to say always because I don't know back into the mists of time. The regulation that specifically requires filing the federal form with its attachments was promulgated in, I think, 2006. And I think before that, this material was required, but not necessarily on the federal form. In 2012 or thereabouts, the Attorney General Schneiderman stepped up enforcement. Mr. Schneiderman changed the way the office handled these documents? He stepped up enforcement. The requirement was not new. The charity's supervision function had been, I think it appeared, largely reactive, and there was an effort to make it more proactive, that is to gather data and do a proactive enforcement. Can you explain the process violation when he changed the way he was enforcing the statute without informing all the people that needed to file? Well, I'll say two things about that. One, I think stepping up enforcement of an existing law and regulation, which admittedly on the face of it always required the filing, not always, from 2006 required the filing of the 990 and the associated schedules. So that wasn't new, what Mr. Schneiderman did. He did a more aggressive enforcement of it, and that's not usually been thought to require notice. But if it did, the sending of a deficiency notice with ample time to cure gave notice. I mean, it wasn't just to Citizens United. There was a large sending out of notices to inform people that this was required. I'm not sure I understand. I wish you would explain the purpose of the Attorney General's policy. What does it do for New York? Well, it's really quite similar to, it's not identical to, but it's similar to what the IRS uses it for. The IRS matches the donor information provided by the charity against tax returns filed by donors to detect and to deter, as well as to find fraudulent deductions. Charity's regulators match the donor information provided by the charity against information they provide about officers, the identity of officers, major suppliers, and beneficiaries, like scholarship recipients or whatever. The point is to make evidence when a charity is using the money that it collects to benefit the major donors and thereby. But you didn't include in that justification, you didn't include anything that relates to the identity of the donors or the amount that an individual donor gave. Yes, when the donor, when the same name is a big donor and is a scholarship recipient or is a donor and is the major supplier of staplers or is a donor and is a highly paid executive, what you have is the classic abuse of charities that the Charities Bureau regulates, which is to prevent the use of charities as a way of self-dealing. That is the function that this. Does it also include the same function as the IRS uses it for with respect to New York donors, New York persons who claim deductions? It could be used that way. I don't believe that the Charities Bureau is principally concerned with tax enforcement, but it could be used that way. They're concerned principally with overseeing. This is a function that goes back to the 1600s, the attorneys general overseeing charities to make sure they actually benefit their charitable purposes and aren't being used for the benefit of their donors. That's essentially the purpose or one of the overarching purposes of charities, supervision. And I should say, by the way, it is in the nature of supervision rather than principally law enforcement. It is a collaborative process. The point isn't to get fines and punishments or cut off activity. It's to induce performance of the charitable function in a way that doesn't exploit. Typically it would be small donors who would be exploited at the expense of large ones or to the benefit of large ones. I want to say that there's no evasion. This preemption argument or the idea that the IRS rules are being evaded is completely mistaken. The IRS, in its guidance to charities about how to fill out the 990 and the Schedule B, says don't attach the Schedule B if you're providing it to a state unless the state requires it, because a state that doesn't require it might not take adequate precaution to protect it, the implication being, of course, that a state that does require it will. So the IRS itself contemplates that state charities regulators will seek these forms directly from the charities. Although Citizens United, in its brief, claimed that 47 other states do not require this. It's true that many states do not require it. That's true. Many states do not do proactive charities enforcement. Your point is that Citizens United is arguing that preemption or somehow violation of federal policy, and you're saying that federal law explicitly acknowledges the fact that states are going to ask for it, showing that the federal government isn't offended or its purposes aren't harmed by that. Exactly. That is exactly the point. Counsel, can I ask one more question? Does the Attorney General, under present law, have the right to disclose? He claims he does not. He does not. What we have here is federal law exempts the names and addresses of contributors from federal public disclosure requirement. That's a federal statute. And then New York, by regulation, continues and respects that protection from public disclosure by saying that registrations, filings, and other documents filed with the AG and not exempt from disclosure pursuant to state or federal law shall be opened to public inspection. There's some question about whether the state may be required by federal law to protect these federal forms. But in any event, the state has expressly chosen for some time, not just recently and not just in connection with this dispute. What is that statute? That is an Attorney General regulation, 13 New York's Code, NYCRR 96.2. Has this changed since 172 has been enacted? It permits the Attorney General to require registration of 501c4s as a charitable organization. Does that change the rules on disclosure? Well, there are questions about those laws. It might come to pass that it would change. This collection of information and disclosure regime considerably predates that statute and the proposed and withdrawn regulation that my adversary mentioned. And this, therefore, stands on a completely different footing. This 2016 statute that you're talking about, 172E and 172F, which is about expenditures for lobbying, essentially. Organization C4s that make expenditures for lobbying must disclose donors, and C3s that make an in-kind donation to a C4 engaged in lobbying must disclose donors. That statute has not gone into effect. It was the subject of an immediate suit to challenge it, and it's in litigation right now. Ending in the Southern District. Correct. And what happens there is really independent. I mean, it might make this less important or not, but that is a public disclosure subject to the opportunity to make a specific claim for exemption. The one we're talking about right now is a confidential disclosure to the Attorney General. So you say that under 96-2, the Attorney General would be violating existing law by disclosing donor information. Yes. And the fact that laws can be changed or that regulations can be changed, that can only be done by considerable process. This is a notice and comment regulation. It's not changeable simply at whim. And were it to be different, there might be a different challenge. But there is clear law now protecting the confidentiality of this information. They say, as you know, in their pleading, that the information is, quote, publicly accessible, at least as of the date of their complaint. Why isn't that a good enough pleading to get past the motion to dismiss? Well, the principal reason is that state law protects the information, that they have one example of an instance of information that improperly became public and was immediately withdrawn when it came to our attention, and that that does not provide a basis for information and belief that this is routinely available. Pardon me? Let's take those points one at a time. The fact that state law prohibits it doesn't mean that there isn't a violation of some federal constitutional requirement, does it? No, but it's some evidence that state law is followed. I mean, there's some presumption. Sure. And at a trial, that would be some evidence. But at a 12 v. 6 stage, is the fact that state law prohibits something enough to overcome their pleading that state law hasn't been followed? Well, I would put it another way. I would say that a plaintiff cannot put the state through discovery and the defense of its entire enforcement practice every time it doesn't like a law and alleges that on one occasion it was violated. I mean, I think it takes more than that to put the state to discovery and proof of the regularity of its procedures. Otherwise, the state could hardly govern. Have you ever gone down that road of saying as long as there's a state prohibition and as long as it's only been violated once, the prohibition is sufficient protection for the confidentiality interest? It's an interesting rule. I just don't know that anyone other than you have said it. Well, I don't know that it's ever come up in quite this context. But I will say that if the claim, as Your Honor suggested earlier, if the claim is that there is widespread violation and in California there was apparently, at least according to the reported opinions, widespread violation, that's putting information out in public and it ought to be, they ought to have been able to find it. We have not found it. They have not found it. And I don't think they, I'm sorry. We'd have to go to thousands of organizations and say have you ever had a problem with New York? No, they wouldn't have to do that. They could either go onto the website and look for Schedule Bs, which is the document they're claiming is improperly being put up there, or they could, you know, if there are thousands, then chances are that in their association of, among the charitable organizations they associate with, somebody else will have experienced it. All right. Let me go quickly, if I can, to the other thing they say they know on information belief, that not all organizations that have declined have been sent deficiency notices. They say there's a selectivity going on there that raises a... Well, they have no information in belief other than that they received one. They don't actually say that they are aware of others that didn't. And as with selective, the claim of selective prosecution in the criminal process, you can't simply say this happened to me and therefore there, and I'm whatever, and therefore there must be selective prosecution here and put the government to the burden of proving that it does enforce the law in an even-handed way. Well, they say on information in belief, they don't say what, where this information came from, what... What it is in specific at all. That's correct. On this point, we're really talking about the specificity of the pleading requirement. You're saying it's not specific because they just say not all have. They've got to, even at the pleading stage, got to give us some examples of people who didn't file and didn't get the deficiency. Yeah, I don't know that they have to name examples. I think it might well be enough if they said we have spoken with, you know, a dozen charities that didn't file their Schedule Bs and didn't get a notice or some such thing like that. But just all they've got is we got it, we didn't get it before, it must be selective. Are you, is this the point you're making, relying on Iqbal, essentially? Yes, yes. It's not, I would say... Now, they say this information is within the peculiar knowledge of the Attorney General, but I don't understand that to cut the mustard with Iqbal. With Iqbal, Iqbal requires even when the information is as it frequently is within the peculiar knowledge of the defendant, Iqbal requires you to plead facts that support a plausible inference. Well, that's true. It's also true that it's not peculiarly within the knowledge of the Attorney General. That is, there is a world of charities and their administrators who talk to each other, and it ought to be possible to find another few instances of what they claim to demonstrate, what they claim is selectivity, without just saying it happened to me and therefore selective. Well, I admit I'm a little troubled by that. I can understand you're resisting a full-scale discovery onslaught, and that's why the pleading rules have to be observed. But I would have thought when they say that they believe other organizations have not filed a Schedule B and have not gotten a deficiency notice, if that's not so, that would be cleared up with one discovery request. Or an interrogatory. They'd say, has the Attorney General sent deficiency notices to every charity that hasn't filed Schedule B? And if you said yes, that allegation would end. But we don't know that, do we? We don't know that, and I'm not here to represent that that is necessarily true. Well, that's what troubles them. If you can't represent that it's so, and they're saying it is so, that they haven't all been, that sounds like that. The Attorney General supervises 63,000 charities. The IRS does not audit everyone. Oh, no, no. Auditing is quite different. If they said, and they don't audit everybody, that's a huge law enforcement thing. That's like saying they don't prosecute every offense. I get that. But a deficiency notice, I would have thought is probably triggered by some computer program. You didn't do this, you get a deficiency notice. I don't know that that's so. I don't know that it's as simple as that. What I do know is that the Attorney General has been working for the last few years to upgrade the quality of data collection, data retention, and data use in the supervision of charities. This pleading is deficient, I guess, for two reasons. One, it doesn't name any entity, even one other. And in any event, whatever selectivity is going on in sending deficiency notices is akin to law enforcement, which is entitled to be on a continuum. Yes. Citizens Foundation, Citizens United, ask, as their ultimate fallback position in their seeking relief, that this be sent to the New York State Court of Appeals, since all we're talking about are New York State statutes. How does the Attorney General feel about that? It's completely unnecessary. What they're asking to certify, as I understand, is the question whether this material is kept confidential or perhaps whether Schedule Bs are required. I mean, these are things that are perfectly straightforward. The Court doesn't usually certify when the answer is apparent on the face of the statute. These are not ambiguous statutes or regulations. I was surprised by your agreement, your yes answer to Judge Newman's last question. I thought your position was that their pleading is deficient because they say, on information and belief, and then they utter a speculative conclusion, and they do not specify any basis for the information and belief, any basis whatsoever for the information and belief. That is my first position. No, I gave her the two theories. Yes. And, in addition, there is some room for non-universal sending out of deficiency notices in a world of imperfect and incomplete law enforcement. That, too, were that to be inquired into, so that I don't have to be able to represent in order to defeat this claim that there is 100 percent detection and deficiency notice sending, because we don't have a computer system that's so good. You represent that there is 100 percent. Am I correct that you do represent that there is 100 percent non-selectivity with respect to sending out of deficiency notices, by which I mean there is zero instance within the Attorney General's office of saying, well, we're going to look particularly at this entity or that entity to make especially sure that they have submitted deficiency notices? No. I know that a very large – I was given a spreadsheet, and I don't have the number – a very large number of deficiency notices were sent out, and that this is an ongoing process to attempt to obtain compliance. That is the point here, not to stop anyone's – I don't understand what you said to be an answer to my question. I'm sorry. Yes, there is no selectivity. No selectivity. Yes. But on the first point, leaving aside the aggressiveness of enforcement, but the fact that they didn't name any, your proposition on that phase of the adequacy of the pleading is that the pleader has an obligation if he wants to assert that deficiency in the Attorney General's performance to go out into the real world and at least find two, three, four, five who didn't file and didn't get the deficiency. That's his obligation, right? To find some basis other than speculation. Well, is there anything between speculation and naming three, four, or five? You don't have to name them. You could say you don't have to give their names, perhaps. Oh, I see. You could say we contacted and we do know there are at least four. I believe that something – I'm really not prepared to specify exactly what I think would comply, but there surely would be ways of giving some meat to that. There could be a source, a person who insisted on doing it on a confidential basis, who is familiar, who works in the Attorney General's office, has informed us that not everyone, that whatever. Thank you. My imagination for sources of information wasn't as good as yours. But, yes, it seems to me that there are many sources of information. More than just, it happened to me, I must be the only one. Thank you. A person who serves as the accountant for numerous charitable entities has told us that entities that he works for regularly get away with not filing the Schedule B. And don't get deficiency notices. Deficiency notices. Perhaps that would be another good source of such information. I'm well over my time. I just wanted to make the point that their claim that donors will be chilled from donating by reason of this regulation has no plausibility to it at all. Why not? Why doesn't that happen? Because, well, they have two theories for chill. One is that if the information is, as we say, held in confidence by the Attorney General, as required by law, donors will be chilled by the fear of government persecution. There's no basis at all for that, any more than for fear of IRS persecution. It can't be enough. Private persecution. That's the second point. That's when it becomes public. They do make both points. They say even if it's completely confidential within the government, that's enough to chill because the government might persecute donors. And that would stop government. You can't just decline to provide information to the government on the grounds that the government might misuse it without some basis. The Fountainhead case, of course, is NAACP against Patterson. And I don't think anything like the extraordinary allegations about the experience of the NAACP in 1950s Alabama could be plausibly alleged here. And then they say it's likely to become public and in the public world people will retaliate or otherwise act adversely to donors. And that will chill them from donating. There is no basis to conclude that if the donor information here became public, that the donor information will become public. And the second step, there is no basis to plausibly allege that harm will befall the donors of the same order as what was going on in NAACP versus Alabama. That was about violence, not just criticism. And shielding people from criticism is not what the First Amendment is for. Its purpose is to encourage robust debate, which includes vehement criticism. Its purpose is not to shield people from that. So thank you.  Thank you. Much of this discussion that's just transpired really shows why the district court should be reversed. This sounds as if this case is here on summary judgment and not dismissal under Rule 12b-6. What the justifications are for the Attorney General's policy, that's not in the record yet. They're mere naked contentions. They have not filed even grounds of defense. Once it's been alleged that there's a violation of the First Amendment, even under the exacting scrutiny standard, it's a fact-intensive inquiry as to whether or not the fit meets a strong enough, important enough governmental justification. With the issue of discretion, the Children's First Foundation can't answer that. I have a question about the risk of public disclosure. It seems to me there's a kind of oddness in your argument that the purpose of the First Amendment is to encourage and protect open discourse and speech. Everybody should be allowed to come and express their viewpoint openly without governmental interference, without retribution from the government, and so forth. What you're arguing for is the ability to do something which admittedly has come under the mantle of speech, but to do it secretly, secret speech. I should be allowed to do secret advocacy and not let anybody find out about my exercise of my right to speak because if they found out about my right to take positions and speak, they might dislike me and subject me to private taunts and private disapproval. There's a kind of oddness about the policy of the First Amendment to promote public open discourse and your position, which is that somebody should be allowed to do something that's called speech but do it in secret so that no one finds out about it. What about that? I don't think there's any inconsistency here. First of all, we're talking about charitable contributions. So with respect to Citizens United Foundation, there may not even be any advocacy involved. We're talking about the donors, the people that give to universities. A lot of big donors give to universities and want to give anonymously. Anonymous contributions, this country has a long, long history of anonymous contributions to charities. And so it's an associational right that goes along with the speech right. And so from that standpoint, anonymous speeches contribute anonymously. But the question is, to what extent does the First Amendment protect one's right to be secretive about one's advocacy and one's speech? There are a long series of cases, from Paney to the Watchtower case, in which the U.S. Supreme Court has made abundantly clear that speakers need not identify themselves. And, in fact, the only context in which the Court has really held that speakers can be required to identify themselves are campaign finance cases. The other cases involving advocacy, such as issue advocacy, the Court has struck down the regulations that prohibit the anonymous distribution of handbills. The IRS's requirement of a Schedule B, is that unconstitutional? The tax code is a little differently. Yes, my view is that it is unconstitutional. It is unconstitutional. And if I could make that call, I would make that call. Yes, Your Honor. I take it the position you want us to take, at least, is that even though solicitors must tell the tax people and the regulatory people who they are, they don't have to tell the public who they are. That's correct, in part. And here, understand, the scope of the Attorney General's sweep of the information he's seeking far exceeds his legitimate law enforcement purposes. He's not just asking for the names of New York donors. Whether or not a donor from New York has been solicited, that your adversary counsel said, that one of the principal purposes is to be able to make sure that the charity, which is soliciting from New Yorkers, is really operating as a charity and not as an abusive front for soliciting funds that will be used to the advantage of major donors. So supposing that a charity is something that's within the control of some citizen of Georgia, a wealthy citizen of Georgia, who controls the charity, solicits funds in New York and uses them to benefit the relatives and the friends and relatives and so forth of the donor. That has nothing to do with, I mean, it is perfectly appropriate to make sure that New Yorkers are not being solicited for charities that are essentially fraudulent or inappropriate as to their charitable purpose. Why isn't that a perfectly valid purpose, to know who are the donors and who are the recipients of the munificence? We're dealing here with the charitable solicitation law. The New York State's principal authority to regulate the internal workings of a charity arise under the Estates, Powers and Trusts law, which is not applicable to Citizens United because the organization is not a New York charity. It doesn't have assets in New York. That would be a question for, with respect to Citizens United, for Virginia authorities. And Virginia authorities have said they don't need that information in order to police whether or not Citizens United is a legitimate charity. I don't understand. How do you respond to your adversary's explanation of why it's important for the AG to get this information, to see that the ostensible charity is not being used abusively to finance inappropriate beneficiaries? Forty-seven other states don't need it. This law was enacted in 1977. Until 2003, the earliest date at which New York says that they started requesting that information, they never needed it. And the answer is not whether they need it. The answer is whether it's an appropriate consideration, whether it's an appropriate thing to, of course, they don't need it. They can just let charities fleece people and use charitable funds for inappropriate purposes. There are other ways of obtaining the information other than a dragnet suite of the names and addresses of the largest donors to 65,000 or more organizations that are kept in a repository in a government agency. If there was some level of suspicion that gives rise to that, they could issue a subpoena to get that information. There are numerous other ways. It's not the fit just is not sufficient. What is a better way of preventing self-dealing than knowing who the potential self-dealers are? They have the names and addresses of the officers and directors. They have the employment information and salaries. Self-dealing is done often by donors. And you're saying, oh, this is just not a very good way to do that? Are there so many better ways to do it? They have no even slight information that they're self-dealing. You don't give up your rights to free association on a mere possibility. Because they're now requiring a disclosure, at least internally, that will warn people you better not self-deal because we're going to know it. The sweep of this law is way too broad to be justified on that. They're seeking to protect New York solicitees from being solicited by organizations that use the solicited funds in a self-dealing manner that's inappropriate for the charity. I don't see why that's not an appropriate person. And I don't see why you say that it's a dragnet. I mean, in order to know, what would evidence improper dealing is when people who are major donors are connected to or are themselves beneficiaries of the charitable enterprise. So the document, different portions of the document working together will evidence the fact that there is inappropriate self-dealing by persons who control or have exercised influence over the charity. What's wrong with that? Same argument was made in California. When it went to trial and the evidence was adduced, the evidence showed that that just didn't happen. The connection never actually occurred in real life. That is whether this is an appropriate thing for the Attorney General to look into, whether it's a meaningful protection of New Yorkers. Well, it has to be tailored. It has to be appropriately tailored. The dragnet is too broad. There's nothing to suggest that the Attorney General would not be able to obtain this information, easily obtain this information, other than through having a dragnet repository of donors. How would it easily obtain this information? Because private charities already disclose their donors, so that's already publicly available. So if there was a concern that it was a big, wealthy private charity that was making the contribution, that's already available. And usually, usually in these situations, it's a complaint. Somebody has issued a complaint. It's just a dragnet policy here. It's not based on any level of suspected misconduct. It is just that the government wants the information and wants to maintain a massive repository of donor information. And once it's in the computer systems, it's always at risk of being leaked out. We've had all kinds of hacking of government and private facilities over the years. So we know there's a danger, even if they take some levels of safeguards. And here, we know that some of the information has been posted on the Attorney General's website. The Attorney General says that was an error. We correct it. We want to know how broad that was. How broad is that? Information and belief should be a sufficient pleading. It seems to be, under this Court's decision, under the Physician's Health Source case, that the complaint in that case, and I have a copy of it, everything was pleaded on information and belief. There weren't any other facts, other than that they had received the facts, that wasn't pleaded on information and belief. And so, in that case, this Court said that was sufficient. Citizens United has set forth a lot more facts in its pleadings to get past the Rule 12b-6 ruling than was ever set forth in the Physician Health Source's case. I think my time is up, but if you have more questions, I'd be glad to answer them. I think you both are very lively and interesting arguments. We'll reserve decision. The last case on our calendar is on submission. I'll ask the Clerk to adjourn Court. Court is adjourned.